3-0-8-0-8-4-1 and 3-0-8-0-8-4-2, people proceeded on the right, athletes on the left, v. James Lanham, Calum Beckham, and Hannah. Mr. Callan, you may proceed. Thank you. Good afternoon. This case is before you for the second time. The first case was Lanham. I refer to it as Lanham 1. It involved probable cause and stopping my client for the offense of DUI. As the procedural matter of this case, it was up for a hearing and a motion to suppress. It was in front of Judge Block at the time. She ruled in favor of the defendant, came up on appeal. It was affirmed by this court. The central issue was whether a citizen's arrest was proper, whether the Terry stop was proper. This court analyzed that in Lanham 1 and affirmed the lower court that the statutory suspension, in the hearing of the statutory summary suspension, that there was no probable cause for the stop and that it was beyond the scope of the jurisdiction of the officers, Shanahan at the time. The case went in front of Judge Vermilla next, and the defendant filed a motion to suppress evidence. At the motion to suppress evidence, the transcript of the police officer in the first testimony that this court reviewed was then submitted into evidence by stipulation of the parties and also the Rule 23 order of this court offered by Justice Litton in that case was also considered by Judge Vermilla. The first point of my brief was that if there was ever a case for collateral estoppel, it should apply in a case like this where the collateral estoppel, the finding in the statutory summary suspension hearing that there was no probable cause ought to apply to the motion to suppress evidence, this is the case. However, the Moore case, the public policy case of Moore, is that hearings or findings, or not hearings, but findings in a statutory summary suspension hearing are not binding on the trial court in the motion to suppress evidence. And there's public policy reasons for you, and I don't really need to explain all that to you because I know you're familiar with it. It's the idea that they should be expeditious hearings and they're concerned with the status of a person's driver's license rather than the person's liberty, and they're designed to have a quick hearing on that, and the state should not be precluded based on the fact that they don't have to get a full-blown hearing and all their evidence there, all their witnesses and all that type of stuff, and it's more of an administrative type of a summary proceeding than it would be for a hearing on a motion to suppress. And my first argument was that if there ever was exception to Moore, it's here because the second thing that comes up in the hearing, there's no rush to judgment, there's no need to proceed expeditiously. The state chose to accept the stipulations of the testimony of the police officer in the first case and the Rule 23 opinion of this court. Now, that's the first argument. It's not the best argument because the People v. Moore specifically says that it's a case, it's not to be done on a case-by-case basis, and I would urge you to do that, but I don't think you can based on the Moore case, take it case-by-case. But what you can do or what I'm urging you you should do is Rule 23, you issue the Rule 23 order, and Rule 23 in Section E says that there's not to be precedent to Rule 23 orders, but they can be collateral, estoppel, or the law of the case. And I'm submitting to this court that your Rule 23 order is the law of the case in for Judge Vermilla. And it's the law of the case. It comes down, there's a defining on the rule, on the probable cause in the case, and it ought to be, I'm submitting, should be the rule of the case now, and Judge Vermilla should have been bound by that. You're just saying the application of the law? It's the law of the case. You're saying the application of the law as found in the first case, the first Lanham case? Yes. Should be applied, the reasoning should be applied, that was in that case should be applied to this case. Absolutely. Not the case itself. Well, the Rule 23 rule order is the law of the case coming up when it goes back to the lower court. The reason I say that is Judge Vermilla, well, not Judge Vermilla, I'm going to say the state, at that particular time when it comes back down and the defendant files a motion to suppress the evidence, at that particular time the state has the option. They're not bound by that Rule 23 opinion. They could have put on additional evidence. They could have called the officer to testify to the things that may or may not have been lacking, in your opinion, in the Rule 23 order. They chose not to. They chose to stipulate to the same testimony, the same transcript that was considered by this court in the first Lanham one, and they also, Judge Vermilla, considered the Rule 23 order in his decision in Lanham two, which we're here for today. So in this case, when you go into the factual circumstances, under the current state of the law where an officer is outside their jurisdiction, here in this case you have an officer who's outside the jurisdiction traveling on the highway, and the defendant passes the person. The officer was going the speed limit and passes pretty fast, so the officer knows from not using anything specially the person has as an officer, but just knows that the officer is going the speed limit and this car zips by that the person is speeding. Isn't that a justification to stop them? Under the current state of the law as it is today. Had that officer come in and called the officer and the motion to suppress, he testifies based on my experience and the accuracy of my speedometer, that I believe that this person was speeding. That's not what we have in Lanham one, though. We have an officer who says the car went by at a fast rate of speed, then I pulled out the radar to check to see if my speedometer was accurate and paced him for a quarter of a mile or so before he pulled him over. So I'm suggesting that there's a distinction there, and this distinction could have been overcome by mistake, Judge. All they had to do was call the officer and clean up the testimony, and they chose not to do that. So I'm suggesting that because of that, that the state chose to stipulate to the transcript of officer-wise in the motion to suppress. But in the transcript, the officer is indicating that the officer was going the speed limit, the other one zips by, or didn't use that wording. I believe he said in the transcript that it passed me, and as it passed me, I glanced down at my speedometer and I saw I was doing 55. Then I pulled out my radar to check and see if I'm accurate. Of course, I'm extrapolating and interpreting the testimony, but I believe that's the gist of his testimony, that after he passed him, that he pulled out the radar gun and checked his speedometer. But once he's already determined that the person was speeding, then there was a justification under the current state of the cases to stop the person, wasn't there? Well, I'm suggesting he didn't make that determination at that time when the car went by him. He only did it after he used his radar. Well, but according to the transcript, the person was going 55, which was the speed limit. The other one, your client passes him. Is that speeding? That's the inference that Judge Vermilla made from the transcript. I presume that's the inference you're making, but it's not clear from the record that that's, in fact, he didn't stop him for speeding and, well, he didn't stop him immediately. He didn't stop him immediately. Correct. He checked the accuracy of the speedometer to do that, and he needed to determine that. I think the record shows he said he needed to determine the accuracy of the speedometer, and then he arrested him for speeding. You know, you may make an inference like that, but the original Lanham One did not make that inference. The original Lanham One indicated that he passed him, but he did not determine his speed at the time he passed him, only that he determined the accuracy of his speedometer, then made that. But under the current cases, now that once the person was determined to be speeding and went past when he was going 55 under curiculitis and cloution, whatever, however pronounced those cases, then the officer is entitled to use some other equipment, right? I think they made that. Yes, that is the rule. I mean, that's the rule today, isn't it? That's the rule today. It was a rule back then. It was a rule when Lanham One was decided based on curiculitis. And cloution. Pardon? The other cases, cloution or something like that, K-L-E-U-T-G-E-N. Yes, Sisler. Sisler is, I think, the one you're talking about, Your Honor. The cloution case is a 05 case. Sisler is a 99. Yes. It's an older case. Yes, it is. It says in the curiculitis cases, a high rate of speed could very well mean 45 in miles per hour, which was supposed to be, you know, probably as an officer of assignment, talking about curiculitis, has never testified in the observed defendant's speeding. It would be presented as a very different case if an officer of assignment had testified in his experience as a traffic officer. He knew what kind of speed he observed based on his experience as a defendant of speeding. We don't have that testimony in this particular case, and I think that's what Lanham 1 hung their head on, so to speak. Well, we have the officer testifying in this case that the officer knew he was going, the speedometer said 55, and the other person passed him. Yes, we have that testimony. That's true. But we don't have this officer testifying. We're splitting hairs here, I've got to admit. We are splitting hairs here. But why I'm splitting hairs here is because procedurally I'm submitting to you that the state could very well have cleaned up this testimony and had Officer Weiss testify, I'm an experienced police officer, and I know the traffic, and when this guy passed me, I knew he was speeding. I just wanted to check my accuracy of the speedometer. And then that's what trips up Carol Levitis to say, okay, I knew he was speeding based on my experience. Therefore, I activated my speedometer and checked it, and that complies with the system. But why I'm saying that, Judge, is this. Judge Vermilla, in my argument before this court, cannot act as the reviewing court and the trial court. I'm suggesting he's bound by Lanham 1, the decision of Lanham 1 that there was no probable cause and the officer exceeded his authority. So he wouldn't be bound by that if the state put out a testimony to clean up the testimony from Lanham 1. Then I think Judge Vermilla would be very within his rights as a trial court judge to parse this court's opinion. But he's parsing this court's opinion without any additional evidence. So I'm suggesting to you that the order of the court is the order of the court. Why have orders of court? If he had additional evidence, I would submit I'm wrong about it. But doesn't really Moore resolve that issue? Pardon? Moore resolves that issue the other way, does he? Well, no, yeah, Moore says that it's not collateral stopping. Yeah, right. Right. But I'm saying, but what we have here is a Rule 23 order, which is the law of the case. That's what I'm saying. Well, what's the difference between you want it to have a binding impact, but the Supreme Court says it doesn't? Well, it doesn't unless there's a Rule 23 order is what I'm saying. The Rule 23 order changes the whole deck of cards. You're not talking about giving the Rule 23 order controlling power over this decision. As I understood what you're arguing, you were saying the analysis in that case should be applied to this case. Right. Not that the case, the decision in the case is. I'm saying both, Judge. I'm saying both. I'm saying that Rule 23E says it's the law of the case, and it ought to stay the law of the case. I understand. Law of the case on this particular issue. Absolutely. And this particular issue, that's correct. Okay. Absolutely correct, Judge. And I think Judge Carter has exhausted me. I don't have anything more to say unless you have any more questions. No, you didn't. I think I've exhausted my questions. Okay. Thank you, Judge. Thank you, General. Thank you, Mr. Callan. Mr. Murrell, is it? Yes. You may respond. Okay. Please support counsel. Okay. With respect to the first issue, the first issue kind of asks the question of whether, as I understood it, whether or not this court can reach the substantive issue of whether there was a private citizen's arrest. I kind of took it from counsel's argument that he was conceding the collateral estoppel issue, the issue of whether this court can apply the collateral estoppel doctrine as an exception to the Moore case. I kind of took the argument previously as sort of conceding that issue. I think the Moore court is fairly clear in rejecting any sort of case-by-case analysis, no matter how fully litigated the issue was previously, and I think that's important. The defendant, the Moore defendant, had argued, well, you should, instead of just making a blanket rule that collateral estoppel does not apply from a statutory summary suspension hearing to a DUI prosecution, rather than making a blanket rule, you should analyze and determine whether or not the issue had been fully and fairly litigated. And I think they fairly squarely rejected that argument. Now, as far as the law of the case, I mean, these aren't the same case. These are separate causes of action. Really, I think that it's as simple as that. The statutory summary suspension is a civil administrative procedure or civil administrative remedy for the state, and the DUI is obviously a criminal prosecution. I think that probably the most analogous case that I saw in the case law was in Tenor. Supreme Court found that a successive post-conviction petition was not the same case as an original post-conviction petition. I think that's kind of a lot of the same facts, but it's still, and, you know, they're related, but it's just that's a separate cause of action, so the doctrine of law of the case is just never going to apply. On to the substantive issue of whether or not Sergeant Weiss had or made a valid citizen's arrest. Okay, he's driving. Okay, Sergeant Weiss is driving from the village of Chanahan. He's on duty. He's driving from Chanahan to, I believe, the Harborside Marina, which was, I guess, annexed by the village, and he's driving in unincorporated Will County. He sees in his rearview mirror, he sees the defendant driving at what he testifies to be a fast rate of speed, or just he sees him driving fast from his rear. He passes Sergeant Weiss's vehicle. He looks down at his speedometer, and it says 55 miles an hour. Now, at this point, he paces the defendant's vehicle. He uses his radar gun, and he determines that he was driving, I think, 71 miles an hour. And then he follows him a little more. He makes observations, which causes him to seize improper lane usage, and he pulls him over and eventually arrests him for D, performs DUI roadside tests, and eventually arrests him for DUI. Now, the question to be determined in this case is whether, and as I pose, actually, I pose two different reasons. First, when he looks down and sees, he looks at his speedometer and sees the defendant drive, or I'm sorry, the defendant drives past him, and then he looks at his speedometer. There's that, and there's also when he observes the improper lane usage. But the question is, does he have reasonable grounds to believe that an offense other than a petty violation has occurred? At that point, he has reasonable grounds, which is probable cause, or he's testified as to facts that give him probable cause to pull the defendant over for speeding. And under the case law, so, okay, so at this point, he has probable cause, he could pull him over. But the problem with your second example is that's after he started using equipment. Right, right. I mean, you know, under the current cases, either you've got it when he passed him and he looked at his speedometer, 55, you have grounds, or you don't, because after that, he started using equipment. And then when he saw the lane change, that was after he started using equipment. Isn't that correct? That is absolutely correct, yes. So there's no problem with that? Yes, he has to have. I mean, if that's the initial, if you're saying that's the initial grounds for the stop, if he had a reason, he could start using equipment under the case law if he had a reason back at the first time. Correct. But if he didn't have a reason back at the first time, using equipment sort of taints things, doesn't it? Yeah, yes. So he doesn't taint things if he had a reason. Right, exactly. That's exactly. So he has to have, at this point, when he looks down, he sees his speedometer. At this point, he has reasonable grounds. So at this point, I think Sisler is the case that goes into that. I think a number of other cases. I think Gutt as well versus Gutt says the same thing. And in fact, the Gutt facts are actually very highly analogous. I think the only difference is in Gutt, the arresting officer observed the defendant driving, and she testified that from her observation and experience, she could tell it was exceeding the speed limit. That gave her, I think, the initial probable cause to then follow him, use her radar gun, observe him, making a left-hand turn without a second. But do we have that testimony here? Excuse me. Do we have that testimony? I am saying that it is him observing the speedometer. It would be the equivalent to that. It will? Well, just as good as that, yes. Because the probable cause is sort of a common-sense determination. So, you know, there's two drivers, and one is driving at speed limit, and the driver gets passed to the left. The first driver knows that the other driver is speeding. You're not allowed to do that under the rules of the road? You're not allowed to pass a car? If the speed limit is 55, you can't pass a car and go over 55? Not if you go over the speed limit. Oh, so every time you pass a car on a two-lane road, you've got to make sure that you can pass that car and always stay at 55 or less, right? Well, I believe that—I mean, I haven't checked the statutory citation, but I think that regardless, if he's passing him at that speed, you know, whatever, over 55, he can still pass him for speeding. Is there an exception to pass—you can speed if you pass? If you're passing, you can speed? Is there an exception like that? I'm not sure, actually, as far as the traffic citations. I don't believe so. I don't remember encountering any in my research anyway. But, uh, but— The guy went off on a different track. In this case— The guy went off on a different track altogether. I mean, it just said, well, he didn't make an off-turn signal. So, that's okay. Yeah. Yeah. I'm not sure. At that point, it's not clear how fast she was driving. I think that—I don't think that you could pursue the defendant. You couldn't pursue over the speed limit. I'm not sure. Let's see. Yeah, I understand. I would argue that what gave—I see exactly what you're saying. She used the radar gun, though, before she observed the left-turn signal and got said that the left-turn signal is what gave him reasonable grounds to pull him over. I would argue that the correct interpretation of that should be that she obtained reasonable grounds by observing him exceeding the speed limit. I think that would be the proper way to look at those facts based on Sisler and based on curvilineous and based on the other cases. So, at this point—and another point I guess I should mention is that—and this kind of relates to the point concerning whether or not he would be able to speed past the speed limit to pass the car, is that at this point— you don't need a case against the defendant. You don't need a case at this point. You just need probable cause. You don't need to prove it. Essentially, this isn't the evidence necessarily that you would present, I suppose. It's probable cause that a common citizen, a regular citizen, would have. Correct. And could get just by using the powers of your senses. Correct. Exactly. So, it sounds like this Court has looked over this issue thoroughly and seems to understand it maybe more than I do. So, if this Court has any further questions. A compliment like that. Let him sit down. I'm afraid to ask another question. All right, I'll thank the Court for its time. Thank you, Mr. Murrell. Mr. Cowell. You might expect to have something to say about the argument. Number one, I'm submitting to the Court that it's a very specious argument to say that these are two different cases, one the statutory summary suspension and the other the DUI. They're all one case. It's different remedies, different burdens of proof on two different sets of pleadings maybe, count one and count two, but it's the same case. It's the same case number. And, you know, probable cause is probable cause. It was found in the lower court in favor of Mr. Lanham and this Court in favor of Mrs. Lanham. And I submit that it's very specious to say it's two different cases. That's number one. Number two is that it's a completely different case, and I'm addressing this to you, Justice Carter, it's a completely different case when the officer would have testified that he knew the person was speeding, he knew his speedometer was accurate, and that he needed his speedometer to determine the accuracy of his speed of the vehicle. Based on his experience and knowledge that he was of the oppressed, because that's what the cases in Gutt say, and that's what the case in Simon's, Officer Simon's in Carabolitis, indicate that there has to be magic words. I know we deal with magic words a lot in the court system, we really do, and the magic words in this transcript were not there, and Judge Bermilla interpreted it contrary to what this Court interpreted in Lanham 1. And I'm suggesting that you can look at it this way. Judge Bermilla joins in Justice Smith's dissent. So we have, he's a dissenting judge in the appellate court. Well, Justice Smith went into Terry Stott. Well, he went into Terry Stott, but I'm going to say he went the same way, dissenting for a different reason, which happens quite a bit. Justice Slater, and that's the last thing. Boy, I missed that guy today, huh, Justice Slater? He said that, and this is the last point, the last point is that a citizen is not allowed to speed up to apprehend the person, and that's, I think, Justice Slater's point in his dissent, or his concurrence. His concurrence is you can't speed up to enter a citizen's arrest because a citizen is not entitled to do that to catch somebody. So therefore, or to pace somebody, that type of stuff. So I'm suggesting that. Although, as to that argument, now with the cases like Curablitus. Curablitus. Curablitus. And then the Guccion case, or what. I don't know. Under those cases, you start, you can't start using your, once you make the initial observation. Absolutely. Once you have the magic words, I agree with you. But we don't have the magic words in this particular case, and we don't have a testimony that I knew my sonata was accurate. Therefore, when I looked at that 55, I was sure of it. Because police officers, as a matter of course, when they go out, a lot of them will testify and say, oh, yeah. I always check my sonata for accuracy because I know I'm going to pace somebody. So we don't have that kind of testimony in this particular case. And I'm submitting to you that Judge Vermillion, very good judge, is not an appellate judge, and he's not entitled to join with Justice Smith in his dissent, and he's not entitled to parse your opinion in the rule 20 people order, unless, of course, there was an additional testimony. Then you can tear your opinion apart based on other additional testimony that you might have known at the time. That's my point, and I'm sticking with it. All right. Thank you, Mr. Callan. Thank you, Mr. Morrell, for your arguments in this matter this afternoon. It will be taken under advisement. A written disposition will issue. The court will stand in brief recess for panel change.